

**U.S. Department of Justice**

*United States Attorney
Southern District of New York*

---

*The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278*

August 29, 2024

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Jordan Townsend*, S3 20 Cr. 293 (LJL)

Dear Judge Liman:

    The Government respectfully submits this letter in advance of the September 5, 2024 sentencing of defendant Jordan Townsend. Townsend was an active participant in a dangerous criminal organization for several years and orchestrated and participated in extensive bank fraud, in addition to expressing desire to participate in armed robberies for the gang, although he was never assigned to commit any. For the reasons set forth below, the Government submits that a below-Guidelines sentence of 60 months' imprisonment would be sufficient but no greater than necessary to serve the purposes of sentencing.

**I.   OFFENSE CONDUCT AND CRIMINAL HISTORY**

    **A.   Offense Conduct**

    Townsend has been an active member of the Mac Ballers with a significant public social media presence for several years, choosing to join the gang after he was the victim of a robbery by other members of the gang in which he was accidentally shot in the leg. (PSR ¶¶ 40, 47). General background information about the Mac Ballers gang is set forth in the Presentence Report. (Presentence Report ("PSR") ¶¶ 23-27). Over that time period, Townsend was a prolific fraudster for the gang. He engaged in multiple fraudulent schemes to earn money with other Mac Ballers, including stealing, washing, rewriting, and depositing personal checks of victims that Townsend or others had stolen out of the mail; selling counterfeit event tickets; and other fraud schemes to the tune of hundreds of thou sands of dollars. (PSR ¶ 44). Townsend participated in frauds that, across the conspiracy, resulted in losses to more than ten victims of between $250,000 and $550,000. (PSR ¶ 44).

    Townsend also regularly possessed illegal firearms in connection with his gang membership. (PSR ¶ 46). Townsend also frequently reached out to his superiors in the gang looking for opportunities to commit additional crimes for the gang, specifically armed robberies. Although Townsend was never assigned to commit any armed robberies despite his requests to

participate, he nevertheless was fully aware that the gang was committing gunpoint robberies on a regular basis and expressed interest in participating. (PSR ¶45).

Townsend was arrested on June 21, 2023, in the District of Maryland, to which he had fled after learning of the warrant for his arrest. Specifically, the indictment in this case was unsealed in October 2022, at which time law enforcement agents unsuccessfully attempted to arrest Townsend at his mother's residence in the Bronx, but Townsend was not present. A few days later, agents again attempted to arrest Townsend at the state courthouse in the Bronx, where Townsend had a court date on a then-pending attempted murder case. Townsend failed to show to his court appearance, but the agents informed his state-court defense attorney of the existence of the federal arrest warrant. Later, officers conducting surveillance looking for Townsend spotted him in the Bronx, but Townsend saw the officers and successfully fled from apprehension. Thereafter, Townsend fled New York City, and the matter was transferred to the U.S. Marshals Regional Fugitive Task Force to track and apprehend him. In June 2023, the United States Attorney's Office had communications with a defense attorney on Townsend's behalf about potentially negotiating a surrender, but Townsend never elected to follow through with turning himself in. Townsend was ultimately located and arrested by the Marshals in Maryland in late June 2023, eight months after the first attempts to arrest him.

**B. Townsend's Criminal History**

Despite being only 28 years old, Townsend has already accumulated multiple criminal convictions:

- In August 2013, Townsend was convicted of possession of a forged instrument in the third degree, in connection with having sold fraudulent event tickets in December 2012 at age 16. Townsend was sentenced to one to three years' imprisonment. (PSR ¶ 85, first half).[1] While incarcerated, Townsend sustained a disciplinary infraction for "violent conduct." (*Id.*).

- Also in August 2013, Townsend was convicted of possession of a forged instrument in the third degree in a separate case, in connection with having sold fraudulent event tickets in April 2013 at age 16. Townsend was sentenced to one to three years' imprisonment, concurrent. (PSR ¶ 85, second half).

- In March 2019, Townsend was convicted of assault in the third degree in connection with a serious, multi-participant fight in July 2018 at age 22. During the fight, two victims were seriously injured, and Townsend slashed a third victim across the face. Townsend was sentenced to time served. (PSR ¶ 86).

---

[1] The Presentence Report appears to be missing a paragraph number next to Townsend's second criminal conviction, such that two separate convictions are listed under the combined label for paragraph 85.

In addition, Townsend committed portions of the instant offense while under a criminal justice sentence of parole. (PSR ¶ 88).

## II. PROCEDURAL HISTORY AND GUIDELINES RANGE

As described above, Townsend was arrested in June 2023 in the District of Maryland and was ordered detained and transferred to this District, where he arrived on August 4, 2024. (PSR at 1).

On May 23, 2024, Townsend pleaded guilty before this Court, pursuant to a Plea Agreement with the Government, to Count One of the Indictment, which charges Townsend with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). (PSR ¶ 15). That offense carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of three years; a maximum fine of the greatest of $250,000 or twice the gross pecuniary gain or loss from the offense; and a mandatory $100 special assessment.

In the Presentence Report, the Probation Office has calculated how the United States Sentencing Guidelines (U.S.S.G. or the "Guidelines") apply in this case, as follows. (*See* PSR ¶¶ 59-89, 127). Specifically, the racketeering Guideline, U.S.S.G. § 2E1.1, calls for each predicate offense to constitute its own Group. The first Group accounts for the defendant's extensive bank fraud and involves enhancements for the loss amount involved in the offense and the number of victims of the offense, resulting in an adjusted offense level of 20. The second Group accounts for the defendant's expressed desire to participate in committing the armed robberies that he knew his fellow gang members were committing and involves an enhancement for possession of a firearm, resulting in an adjusted offense level of 25. After adjustments for grouping and acceptance of responsibility, the defendant's total offense level is 23. With eight criminal history points, Townsend is in Criminal History Category IV. Accordingly, the Probation Office has determined that the applicable advisory Guidelines range is 70 to 87 months' imprisonment. (PSR ¶ 127).

This calculation is slightly lower than that to which the parties stipulated in the Plea Agreement. Specifically, the parties stipulated that, pursuant to U.S.S.G. § 2B1.1(a), the base offense level for Group One is seven, because the defendant was convicted of an offense that references U.S.S.G. § 2B1.1 (via U.S.S.G. § 2X1.1, *see* U.S.S.G. § 2B1.1 app. note 2(A)), and the offense of conviction carries a statutory maximum sentence of 20 years' imprisonment or more. (*See* PSR ¶ 15). The Probation Office, by contrast, used a base offense level of only six. (*See* PSR ¶ 62). This results in a one-level difference in the total offense level for Group One, which in turn impacts the final grouping analysis by one offense level because it dictates whether the defendant has 1.5 or 2.0 Units. Thus, the parties had stipulated that the defendant's total offense level was 24, resulting in a Guidelines range of 77 to 96 months' imprisonment. (PSR ¶ 15).

## III. DISCUSSION

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. The Court Should Impose a Sentence of 60 Months' Imprisonment

The Government submits that the nature and circumstances of the defendant's offense, including the defendant's firearms possession and expressed desire to commit violent crimes, and the need to promote respect for the law, to provide just punishment, to protect the public from the defendant, and to deter the defendant and others from committing gang-related criminal conduct all weigh in favor of a substantial sentence of imprisonment. The Government agrees, however, that certain aspects of the defendant's offense conduct and criminal history weigh in favor of a conclusion that a sentence below the applicable Guidelines range (whether the Court ultimately uses 70 to 87 months or 77 to 96 months) may be sufficient to serve the purposes of sentencing. For the reasons set forth below, the Government respectfully submits that the Court should impose a sentence of 60 months' imprisonment.

A significant sentence of imprisonment is necessary to reflect the seriousness of the defendant's conduct, to provide just punishment, and to promote respect for the law. For many

years, the defendant was a member of a violent street gang, engaging in a wide variety of criminal conduct including fraud, firearms possessions, and requesting that he be sent on armed robberies. The defendant's conduct reflects a lack of respect for the law and a willingness to commit violent crimes in furtherance of the gang. That willingness to engage in violence is particularly striking, given that the defendant himself was the victim of Mac Baller-inflicted violence before joining the gang and expressing desire to inflict that kind of harm on others.

And the gang Townsend belonged to contributed to the epidemic of gang violence that is currently plaguing New York City and warrants significant punishment. Indeed, the mere presence of illegal firearms in our society poses a substantial threat to our communities, and it contributes to a host of other violent crimes. A substantial sentence of imprisonment is therefore necessary to afford adequate deterrence of criminal conduct of this type—both for the defendant specifically and for other would-be gang members—and to protect the public from the defendant. Indeed, the defendant has had several prior experiences with the criminal justice system, and he has already served a substantial sentence of imprisonment for committing fraud crimes. Instead of the defendant learning from that experience, taking the experience to heart, and appreciating the second chance he was given by living life as a law-abiding citizen, the opposite has occurred. The defendant's criminal conduct has gotten more serious as he has graduated to committing substantial and sustained fraud, possessing firearms, and expressing a desire to commit armed robberies with his street gang. A significant sentence is necessary to deter the defendant from future crimes and to protect the public from the defendant.

Looking beyond the defendant, in a case like this—where the defendant was involved in a prolific violent gang that is well-known in the community for the criminal conduct it commits and the terror it causes in our city, the need for general deterrence is critically important. Even though the defendant was primarily involved in the gang's extensive fraud conduct, that conduct still victimizes real people and provides the primary source of income for the gang, which in turn is kicked up to gang leaders and used for communal criminal activity like buying guns and drugs. The sentence imposed in this case will send a message to anyone who might consider joining a gang like the Mac Ballers that their conduct will be punished regardless of the role in the gang they adopt, and that they will be held accountable for their actions.

The Government acknowledges that certain aspects of the defendant's offense conduct support the conclusion that the Guidelines may be slightly overstating the seriousness of the offense. Specifically, the Government has no evidence that the defendant committed any armed robberies for the Mac Ballers, only that he requested of his gang superiors that he be sent on such assignments. For that reason, the Government believes that—while not technically applicable—the three-level reduction found in U.S.S.G. § 2X1.1 for conspiracies that do not materialize into nearly completed offenses can serve as a useful guide for how large of a downward variance may be warranted on this point. Using that magnitude of reduction as a guidepost would suggest that a sentence in the range of 4.5 to 6.5 years' imprisonment may be appropriate. But the substantial downward variance requested by the defense is unwarranted here, where the defendant also has dangerous conduct—namely, the frequent possession of illegal firearms in connection with his gang membership—that is *not* captured in the Guidelines offense level. Similarly, while the Government agrees that the Court should consider that the defendant's criminal history points largely result from convictions sustained while the defendant was 16 years old, the Government

submits that that fact is insufficient to justify a sentence as low as the defendant requests. Indeed, it is the presence of these prior convictions that appropriately drives substantial aspects of the Court's Section 3553(a) analysis regarding individual deterrence, predictions of future recidivism, and the need to promote respect for the law.

The defendant's other purported mitigating factors similarly are insufficient to justify the downward variance the defendant requests. Many defendants who come before this Court for sentencing, particularly in cases involving significant street violence or gang activity, suffered through extremely adverse upbringings and were, to a degree, funneled towards the bad choices they made. Section 3553(a) commands this Court to avoid unwarranted disparities among similarly situated defendants, which the Second Circuit has explained refers to the sentences imposed in other cases, nationwide, in which similarly situated defendants commit similar crimes. *See, e.g.*, *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). In weighing this factor, the Court should consider not only the Guidelines (which are intended to create a standard baseline and were based on empirical data) but also the statistical data attached to the Presentence Report, which reflects that a sentence around 60 months' imprisonment would be appropriate, as *below* the average and median sentences imposed in similar cases. Indeed, the data reflects defendants whose Guidelines range is driven by U.S.S.G. § 2B3.1, the robbery guideline—not even accounting for the gang-related nature of the offense or the fraud or firearms possession, and it therefore arguably underrepresents the sentences imposed on other similarly situated defendants.

## IV. CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of imprisonment of 60 months.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: ____/s/_____
Jacob R. Fiddelman
Peter J. Davis
Frank J. Balsamello
Assistant United States Attorneys
(212) 637-1024

cc: Counsel of record